UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JENNIFER M. RESTO | ) | CIVIL ACTION NO. |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| ORLOR, INC. d/b/a EXECUTIVE HONDA | ) | APRIL 16, 2018 |
|     Defendant | ) | |
| | ) | |

COMPLAINT

I.  INTRODUCTION

1.      This is a suit brought by a consumer under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, against a car dealership.  Plaintiff also asserts pendent state law claims against the defendant for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*  Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant Orlor, Inc. d/b/a Executive Honda ("Executive Honda").

II.  PARTIES

2.      Plaintiff, Jennifer M. Resto ("Resto" or "Plaintiff"), is an individual and a consumer residing in Meriden, Connecticut.

3.      Defendant, Executive Honda, is a Connecticut corporation that operates a motor vehicle dealership in Meriden, Connecticut.

III.  JURISDICTION

4.      Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5.      This court has jurisdiction over Executive Honda because it is organized under the laws of the state of Connecticut and regularly conducts business in this state.

6.      Venue in this court is proper because the Plaintiff resides in Connecticut and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

7.  On or about January 30, 2018, Resto's 2009 Honda Accord (the "Accord"), was damaged in an accident and was eventually declared a total loss.

8.      Prior to February 8, 2018, Executive Honda advertised a 2018 Honda Fit for sale for $19,550.  The advertisement did not disclose that Executive Honda charged any dealer conveyance fee.

9.      Prior to February 8, 2018, Resto received a brochure from Executive Honda advertising a "Spin to Win" event for a chance to win prizes applicable to vehicle purchases.

10.      Following the instructions in the brochure, Resto went on-line to participate in the "Spin to Win" event, and she received a voucher for three years of free maintenance.

11.      On or about February 8, 2018, Resto went to Executive Honda to purchase another vehicle and she met with salesman German Rueda ("Rueda").

12.      Resto informed Rueda that she needed to keep her monthly payments at $300 and that she wanted GAP coverage as part of any purchase.

13.      Resto test drove a new 2018 Honda Fit that was on Executive Honda's lot, but she wanted a blue car, and Executive Honda told her they could get her the vehicle in blue and that the payments would be within her budget.

14.     While test driving the Honda Fit, Resto asked Rueda if the dealership was offering any promotions such as oil changes for life or lifetime maintenance, and Rueda told Resto that the vehicle would have a bumper to bumper interior and exterior warranty.

15.     During the test drive, Resto also told Rueda that she had received the "Spin to Win" brochure and had won free maintenance, and Rueda told Resto to bring the voucher when she completed the sale and that Executive Honda would honor it.

16.     Based on Rueda's representations that Executive Honda could obtain a new 2018 Honda Fit in blue, that she could be approved for payments that satisfied her budget requirement that payments be no more than $300/month, that the contract would include GAP, that she would receive a bumper to bumper warranty, and that Executive Honda would honor the voucher for three years of free maintenance, Resto agreed to purchase a new 2018 Honda Fit (the "Vehicle").

17.     Plaintiff paid a deposit of $500 to Executive Honda for the Vehicle and agreed to pay an additional $500 at the time of delivery.

18.     Executive Honda prepared a Purchase Order that listed a cash sale price of $19,135.00, but did not disclose financing terms.

19.     Resto agreed to take delivery of the Vehicle on February 10, 2018.

20.     On or about February 9, 2018, Resto called Executive Honda and requested to change the purchase to a Honda Fit that had heated seats.

21.     Executive Honda told Resto that they would install heated seats in the Vehicle, and that her payments would still be within her requested payment range of under $300.

22.    On that same date, February 9, 2018, Executive Honda called Resto and advised her that there was a problem with financing, but it would work on getting Resto approved with a different lender.

23.    Resto told Executive Honda that if it could not get the loan approved at the monthly payments she required, she would pick up her $500 deposit before close of business that day and explore other options.  Executive Honda assured her that it would be able to approve financing and asked her to return to the dealership the following day.

24.    Concerned about whether her requirements could be met, Resto went to Executive Honda after work on February 9 and met with Rueda. She told him that if Executive Honda could not approve her for $300/month or less, then she would like to receive her deposit back.  Rueda assured her that everything was "all set" and that she should return the next day to take delivery.

25.    Resto returned to Executive Honda on or about February 10, 2018 to finalize the documentation and take delivery of the Vehicle.

26.    Resto was told that the Vehicle, which she had not previously seen, was being treated with an interior protection product and would require some time to dry.

27.    When Resto arrived at Executive Honda, Rueda told her that her monthly payments would be $380 and that the increase was because she owed a balance on her Accord following the payment of insurance proceeds by her carrier.

28.    Executive Honda also told Resto that she could not get heated seats, she would not receive the bumper to bumper interior or exterior warranty, and that it would not honor the voucher for free maintenance.

29.     Resto requested a refund of her $500 deposit, but Executive Honda refused to refund the deposit and advised that if Resto did not complete the purchase, Executive Honda would keep the deposit.

30.     Executive Honda also told Resto that if she did not complete the transaction, her credit would be ruined and she would not be able to be approved for financing at any car dealership.

31.     After waiting at the dealership for move than two hours, Executive Honda presented Resto with a new Purchase Order that listed a cash sale price of $20,186, an amount that was $1,051 more than the first Purchase Order.

32.     Fearing that she would lose her deposit and not be able to purchase another vehicle, Resto paid the additional $500 as a down payment, and she financed a balance of $21,186.50 pursuant to a Retail Installment Contract (the "Contract") with Executive Honda as the seller.

33.     Executive Honda subsequently assigned the Contract to Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services ("Wells Fargo").

34.     The Contract provided for 72 monthly payments of $383.39.

35.     At the time the Accord was declared a total loss, Plaintiff owed a balance of approximately $9,509.81 to Wells Fargo, who also held the lien on the Accord.

36.     Resto's insurance carrier, Progressive Insurance, paid Wells Fargo the sum of $7,776.06 towards the lien that secured the Accord.

37.     Upon information and belief, Executive Honda paid approximately $1,720.81 to Wells Fargo to pay the balance owed on the Accord following the insurance payment and a credit for a service contract.

38.     Executive Honda increased the sale price of the Vehicle to offset the payment that it made to Wells Fargo, because, on information and belief, satisfaction of the balance owed on the Accord was a condition for Wells Fargo's agreement to accept assignment of the Contract.

39.     After Plaintiff had signed the Contract, the Vehicle was delivered to her.

40.     Unbeknownst to Plaintiff, the Vehicle had damage to the front left fender.

41.     Executive Honda backed the Vehicle up to the door so that the Plaintiff would go directly to the driver's side door and not see the damage.

42.     It was raining heavily at the time, and Plaintiff did enter the Vehicle directly without circling it to inspect for damage, and Plaintiff took delivery without discovery of the prior damage.

43.     Plaintiff noticed the damage the following morning.

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT

44.     Executive Honda violated TILA because it did not include the pay-off on the Accord as part of the itemization of the amount financed, thereby rendering the itemization of the amount financed inaccurate.

45.     Additionally, Executive Honda charged Plaintiff a higher price for the Vehicle than it would have charged her in a cash purchase, because the payment of the balance owed on the Accord was a condition of financing. Consequently, the higher cash price was an incident of the extension of financing and should have been disclosed as a finance charge. Instead, this amount was buried in the purported "cash price" of the Vehicle and included as part of the amount financed.

46.     Additionally, the increased cash price of the Vehicle resulted in excess sales tax paid by Plaintiff on the portion of the increased sale price, and this excess sales tax would not have been charged to her in a comparable cash transaction, and it should have been disclosed as a finance charge.  Consequently, the increased sales tax was an incident of the extension of credit.

47.     For its violations of TILA, Executive Honda is liable to Plaintiff for statutory damages of $2,000, actual damages, and a reasonable attorney's fee pursuant to 15 U.S.C. § 1640.

## B.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

48.     Executive Honda's actions, as alleged above, constitute unfair and deceptive acts and practices in violation of CUTPA.

49.     Executive Honda has violated CUTPA in the following ways:

a.     Its violations of TILA;

b.     It made false statements regarding the monthly payments for the Vehicle;

c.     It refused to return Plaintiff's down payment after Plaintiff requested a refund when Executive Honda was not able to secure financing at the terms they had agreed to, i.e. monthly payments under $300;

d.     It failed to sell the Vehicle at the advertised price;

e.     It sold the Vehicle to Plaintiff for more than the contract price listed on the first Purchase Order;

f.     It misrepresented that the Vehicle was in "new" condition when it was damaged;

g.     On information and belief, it falsely told Plaintiff that the Vehicle was not in its inventory when she was initially shopping for it, because it did not want her to discover the damage;

h.     It acted deceptively and unfairly by structuring the delivery in a manner to prevent Plaintiff from discovering the damage to the Vehicle;

i.     It violated Conn. Gen. Stat. § 14-62(a) by not disclosing finance charges in the initial purchase order;

j.     It collected a non-refundable deposit without properly disclosing the conditions under which the deposit would be refundable;

k.     It collected a non-refundable deposit prior to disclosing the complete terms of purchase, including finance charges and monthly payments;

l.     It collected a non-refundable deposit by making false statements regarding the transaction;

m.     It misrepresented to Plaintiff that it would install heated seats in the Vehicle, and then refused to install the heated seats;

n.     It charged a dealer conveyance fee of $499 that had not been disclosed in the manner required by Conn. Gen. Stat. § 14-62a;

o.     It advertised the Vehicle without including the disclosure required by Conn. Gen. Stat. § 14-62a regarding the dealer conveyance fee; and

p.     It refused to honor the three years of free maintenance that Plaintiff won through Executive Honda's "Spin to Win" campaign.

50.     As a result of the conduct of the defendant, Plaintiff has suffered an ascertainable loss because she paid a higher sales tax and she pays a higher monthly

payment than she agreed to pay. Additionally, she is now responsible for the costs of maintenance on the Vehicle. She has also been saddled with a monthly payment that exceeds her budget, does not include the heated seats that she desired, and that does not provide the GAP protection for which she had bargained. She also received a Vehicle that was not in "new" condition and that had a value that was substantially less than the condition of a Vehicle that was new and undamaged.

51.   For Executive Honda's CUTPA violations, Plaintiff is entitled to damages, and in the discretion of the Court, punitive damages and attorney's fees and costs.

WHEREFORE, Plaintiff claims statutory damages, actual damages, punitive damages, and attorney's fees and costs.

PLAINTIFF, JENNIFER M. RESTO

By: _____

Daniel S. Blinn (ct02188)
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com